Humberto Guizar, SBN 125769
**LAW OFFICES OF HUMBERTO GUIZAR**
**A PROFESSIONAL CORPORATION**
3500 W. Beverly Blvd.
Montebello Ca 90640
Tel: (323) 725-1151
Fax: (213) 402-8622
Email: hguizar@ghclegal.com

Christian Contreras, SBN 330269
Email: CC@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

Denisse O. Gastélum, SBN 282771
Selene Estrada-Villela, SBN 354994
**GASTÉLUM LAW, APC**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email : dgastelum@gastelumfirm.com
sestradavillela@gastelumfirm.com

Attorneys for Plaintiffs, ESTATE OF STEPHEN INGLE, et al.

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF STEPHEN INGLE, by and through successors in interest, C.R.I., by and through Guardian Ad Litem, Elizabeth Leal; C.R.I., individually, by and through Guardian Ad Litem, Elizabeth Leal, <br><br> Plaintiffs, <br><br> v. <br><br> KERN COUNTY HOSPITAL AUTHORITY, a public entity; and DOES 1 through 10, individually, jointly and severally, <br><br> Defendants. | **CASE NO.:** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 2. Failure to Provide Medical and Mental Health Care, Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983); <br> 4. Unconstitutional Policies, Customs, Practices (*Monell*, 42 U.S.C. § 1983); <br> 5. Negligence – Wrongful Death; <br> 6. Negligence – Medical Malpractice; <br> 7. Violation of California Government Code §845.6; <br> 8. Violation of California Civil Code §52.1 (Tom Bane Act); <br> 9. Declaratory Relief (28 U.S.C. § 2201) <br><br> **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES**

**COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs ESTATE OF STEPHEN INGLE, by and through successors in interest, C.R.I., by and through Guardian Ad Litem, Elizabeth Leal; C.R.I., individually, by and through Guardian Ad Litem, Elizabeth Leal, and allege as follows:

**INTRODUCTION**

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the death of pretrial detainee STEPHEN INGLE. On March 4, 2023, a mere two (2) days after being arrested for non-violent offenses, STEPHEN INGLE was in custody at the KERN COUNTY SHERIFF's OFFICE, Central Receiving Facility (hereinafter also "CRF") where he was found hanging from a shower rod with a jail-issued bedsheet tied around his neck. Given that COUNTY OF KERN (hereinafter sometimes "COUNTY") and KCSO have attempted to cover up the death of STEPHEN INGLE and the deaths of many others who have died in COUNTY custody, this action also seeks to bring to public light the deliberate disregard for safety and protection carried out by Defendants in the present action.

2.      STEPHEN INGLE leaves behind a loving family including his daughter, Plaintiff C.R.I. who is now left without a father. STEPHEN INGLE was born in Bakersfield, California where he grew up and attended local Bakersfield schools including Fairfax Elementary and Foothill High School. STEPHEN INGLE loved working on oil rigs on land and offshore, and was a true outdoorsman in very sense of the phrase. STEPHEN INGLE's love for the outdoors led him to Casper, Wyoming where he lived for almost 10 years. Eventually, STEPHEN INGLE moved back to



**COMPLAINT FOR DAMAGES**

his home of Bakersfield, California where STEPHEN INGLE spent the last several years of his life working, making people laugh, and spending time with his family.

3. The unfortunate and tragic death of STEPHEN INGLE was a direct result of Defendants' deliberate indifference to STEPHEN INGLE's rights including STEPHEN INGLE's Fourteenth Amendment right to be free from harm and right to medical care. Despite Defendants' actual and express knowledge of the dangers STEPHEN INGLE faced, Defendants were deliberately indifferent.

4. In 2023, KERN COUNTY'S correctional facilities, including the KERN COUNTY SHERIFF'S OFFICE's Central Receiving Facility, Lerdo Justice Facility, Lerdo Pre-Trial Facility, Max/Med Security, and Minimum Security (hereinafter collectively "COUNTY Jails"), have resulted in eleven (11) in-custody deaths. The deaths include six (6) suicides and five (5) "natural cause" deaths.  STEPHEN INGLE's death is one of six (6) suicide deaths within the COUNTY Jails during the 2023 calendar year.

5. Long before STEPHEN INGLE's death, each of the individually named Defendant KERN COUNTY HOSPITAL AUTHORITY knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

6. The Defendants' deliberate indifference towards inmates and detainees suffering from mental health issues resulted in dozens of suicides since 2008. Since 2008, twenty-two (22) inmates have died by suicide within the COUNTY Jails – six (6) of which occurred in 2023 alone.

7. The individual defendants named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths.

8. Despite this long history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails.  Thus,

**COMPLAINT FOR DAMAGES**

by the time STEPHEN INGLE was taken into custody and placed in the Central Receiving Facility, the COUNTY Jails were infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in STEPHEN INGLE's death on March 4, 2023.

9. Accordingly, this complaint seeks to redress the egregiously constitutional violations Defendants have committed.

## JURISDICTION AND VENUE

10. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

11. This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

12. Venue is proper within the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## PENDENT CLAIMS

13. Plaintiff presented her government claims on August 29, 2023, and received a conformed copy of the government claim. COUNTY rejected Plaintiff's claim on October 17, 2023. Plaintiff brings this action within six months of the tort claim rejection. Accordingly, Plaintiff has complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

14. With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

///

///

**COMPLAINT FOR DAMAGES**

**PARTIES**

**A. Plaintiffs**

15.     Decedent STEPHEN INGLE was a 38-year-old father of his daughter, C.R.I. At the time of his death, he was a pretrial detainee who resided in Kern County, California. The claims made by Plaintiff ESTATE OF STEPHEN INGLE are brought by his successor in interest, C.R.I.

16.     Plaintiff C.R.I., a minor by and through her Guardian Ad Litem, Elizabeth Leal, is and was, at all times relevant hereto, a resident of Kern, California, and was the natural daughter of decedent STEPHEN INGLE. Plaintiff C.R.I. was fourteen years old when her father, STEPHEN INGLE, died after being found hanging from a shower rod with a jail-issued bedsheet tied around his neck at CRF. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq*. and 377.60 *et seq*., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of decedent STEPHEN INGLE on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

**B. Defendants**

17.     Defendant KERN COUNTY HOSPITAL AUTHORITY (hereinafter also "KCHA"), a separate public entity, employes other Doe Defendants in this action. At all times relevant herein, COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including the Kern Medical Correctional Medicine employees (hereinafter also "KMCM") which are assigned to provide medical care to inmates housed at the COUNTY jails, complied with the laws and the Constitutions of the United States and the State of California. Defendant COUNTY, through KCHA, is and was responsible for ensuring the safety of all persons incarcerated at the COUNTY Jails, including CRF, and providing them appropriate medical and mental health treatment.

5

COMPLAINT FOR DAMAGES

18.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

19.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the KCSO, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through 10 were and still are residents of the County of Kern, California. DOES 1 through 10 are sued in both their individual and official capacities.

20.     At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of COUNTY. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY. They had supervisorial authority over DOES 1-10, and the COUNTY employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

21.     At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the KCSO and/or the COUNTY. They had supervisorial

6

**COMPLAINT FOR DAMAGES**

authority over DOES 1-10, and the employees of the KCSO. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

22.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

23.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent STEPHEN INGLE's constitutional rights and other harm.

24.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

**COMPLAINT FOR DAMAGES**

25.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

26.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

27.     STEPHEN INGLE was born in Bakersfield, California where he grew up and attended local Bakersfield schools including Fairfax Elementary and Foothill High School. STEPHEN INGLE loved working on oil rigs on land and offshore, and was a true outdoorsman in very sense of the phrase. STEPHEN INGLE's love for the outdoors led him to Casper, Wyoming where he lived for almost 10 years. Eventually, STEPHEN INGLE moved back to his home of Bakersfield, California where STEPHEN INGLE spent the last several years of his life working, making people laugh, and spending time with his family.

28.     On March 1, 2023, STEPHEN INGLE was arrested by Bakersfield Police Department and incarcerated at Kern County Jail, Central Receiving Facility in Bakersfield, California. Upon information and belief, STEPHEN INGLE was evaluated by KCHA medical nurse, DOE 1, on this same date, for an initial intake and/or medical screening.

29.     Upon information and belief, STEPHEN INGLE met with CONNOR BRAY (Classification Officer) and STEPHEN INGLE expressed concerns CRFregarding a traumatic head injury, skull fracture and withdrawal symptoms related to his prior substance abuse. Despite STEPHEN INGLE being at risk of harm, Defendants 1 through 10 housed STEPHEN INGLE in a housing location where he was exposed to potential hazards.

30.     On March 2, 2023, at approximately 1:20 P.M., inmates yelled for a "man down" from cell A3-5 where STEPHEN INGLE was housed. JESSE NOREZ responded and observed INGLE lying on the ground. INGLE reported to JESSE NOREZ that he was suffering from withdrawal symptoms.

**COMPLAINT FOR DAMAGES**

31.   On this same date, STEPHEN INGLE was evaluated by KCHA medical nurse, DOE 2, and cleared to remain housed at the CRF.

32.   On March 3, 2023, at 12:08 P.M., STEPHEN INGLE refused to attend his scheduled court appearance, stating that he was feeling ill.  Although INGLE declined medical attention, his documented withdrawal symptoms and deteriorating state should have prompted immediate medical intervention.

33.   On March 4, 2023, at approximately 8:30 A.M., while STEPHEN INGLE was housed in a communal cell with seven (7) other inmates, custody staff, including WILLIAM HINKLE and ROBERT WINN, responded to INGLE'S cell for yet another "man down." INGLE was found unresponsive, lying on the floor inside the shower stall. INGLE was fully clothed with the shower water running.  INGLE had a bleeding laceration on the left side of his head and stated he had "slipped" while attempting to get into the shower.

34.   Following this incident, KYLE MCKEEVER other inmates whether Ingle needed to be "rolled out" of the cell or if it was safe for him to remain.  CRFINGLE was subsequently transported via ambulance to Kern Medical where he received medical treatment and received eight (8) stitches on the left side of his head.

35.   Thereafter, approximately four (4) hours after receiving medical treatment, STEPHEN INGLE was transported back to CRF.

36.   Upon information and belief, STEPHEN INGLE was evaluated by KCHA medical nurse, DOE 3, upon his return from Kern Medical and cleared to remain housed at the CRF.

37.   Once he arrived at CRF, Defendants 1 through 10 should have re-evaluated STEPHEN INGLE's medical condition and reclassified STEPHEN INGLE in order for STEPHEN INGLE to at the very least be housed in a different location and/or different facility. Despite having express knowledge of the risks that STEPHEN INGLE faced, Defendants 1 through 10 placed STEPHEN INGLE in the same communal cell.

9

**COMPLAINT FOR DAMAGES**

38.     Furthermore, in connection with their investigation and speaking with STEPHEN INGLE, Defendants 1 through 10 were aware, either expressly or implicitly, that STEPHEN INGLE was exhibiting signs of withdrawal and suicidality. However, despite having such information, Defendants 1 through 10 did not abate such substantial risks to STEPHEN INGLE's life.

39.     Foreseeably, at approximately 4:45 P.M. on March 4, 2023, Defendants ISAAC QUIROZ, KYLE MCKEEVER, and JESSE NOREZ responded to STEPHEN INGLE's cell where he was found hanging in the shower. When emergency personnel arrived on the scene, STEPHEN INGLE was found unconscious and without a pulse. STEPHEN INGLE was rushed to the hospital thereafter. Between transport and arrival to Adventist Health Bakersfield, decedent Stephen Ingle was revived and subsequently admitted into the intensive care unit.

40.     At Adventist Health Bakersfield, STEPHEN INGLE's mother, was advised by nurses that Mr. Ingle was "attacked in his cell by inmates." As a result, STEPHEN INGLE was placed on life support. Unfortunately, STEPHEN INGLE did not die peacefully and did not experience a quick death. STEPHEN INGLE suffered immense pain after nearly dying. STEPHEN INGLE was on life support in the ICU from March 4, 2023, to March 29, 2023. STEPHEN INGLE ultimately died on March 29, 2023.

41.     RILEY HAISLIP was assigned to investigate the facts and circumstances surrounding INGLE's death. Thereafter, HAISLIP conducted an investigation that served to shield ROBERT WINN, ISAAC QUIROZ, KYLE MCKEEVER, JESSE NOREZ, WILLIAM HINKLE, CONNOR BRAY and DOES 1 through 6 from liability with regard to INGLE's death. Following INGLE's death, KCSO's death review panel acknowledged and recommended that inmates should be referred for mental health services when identified as suffering from withdrawals from alcohol and/or drugs.

42.     STEPHEN INGLE was a pretrial detainee, and therefore, innocent until proven guilty.

**COMPLAINT FOR DAMAGES**

43.    Plaintiffs timely and properly filed tort claims with the County of Kern pursuant to California Government Code sections 910, et seq., and this action is timely filed within all applicable statutes of limitation.

44.    This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

45.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

**A. Defendant Supervisors Had Knowledge of Inadequacy and Delivery of Mental Health Care at the Kern County Jails and Failed to Take Corrective Action.**

46.    Prior to May 3, 2023, high level COUNTY supervisors, including SHERIFF YOUNGBLOOD, knew or should have known of a history of years of notice

of ongoing failure to provide inmates indicated and timely reasonable medical/mental health care, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate cells and beds, incompetent and inadequate provision of health care and delivery thereof, denying access to outside hospitals or other mental health programs, failure to take corrective measures, including ignoring judicial orders to abate or take corrective action regarding medical and mental health care to inmates and detainees, notice from quality assurance and death reviews, from litigation alleging failure to provide reasonable medical and mental health care, and from publications of endemic, ongoing and unabated risks of injury or death to inmates. The number of lawsuits against the COUNTY and throughout the state and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to known ongoing hazards to ill detainees and their failure to take corrective action.

47.    As a preamble, between 2018 and 2023, the COUNTY had noticed a slew of cases revealing constitutional violations of inmates' rights to reasonable medical care. Due diligence would have revealed these breaches of constitutional mandates:

48.    In 2023, KERN COUNTY SHERIFF'S OFFICE Jails have resulted in eleven (11) in-custody deaths. The deaths include six (6) suicides and five (5) natural cause deaths.

49.    STEPHEN INGLE's death is one of six (4) suicide deaths within the COUNTY Jails during the 2023 calendar year.

50.    The Defendants' deliberate indifference towards inmates suffering from mental health issues resulted in several suicides since 2008. From January 2008 through December 2023, twenty-two (22) inmates have died by suicide within the COUNTY Jails:

51.    On July 29, 2020, pretrial detainee Michael Shinsky died of suicide due to the events that occurred while in custody at the Kern County Sheriff's Office Central Receiving Facility. Mr. Shinsky was found by another incarcerated person

**COMPLAINT FOR DAMAGES**

hanging by a bedsheet in the shower that morning. Life saving measures were attempted and Mr. Shinsky was stabilized. He was then transported to Adventist Health Bakersfield Emergency Room. Mr. Shinsky was then pronounced dead on July 29, 2020, at 34 years old. He was only incarcerated for three days before this incident occurred.

52.    On September 5, 2020, Jose Rodriguez was found alone and unresponsive in his cell at the Kern County Sheriff's Office Lerdo Pre-Trial Facility from an apparent suicide. Mr. Rodriguez was only 24 years old at the time of his death. The deputy who found Mr. Rodriguez entered the cell and cut the noose, causing him to fall and strike the right side of his head. Mr. Rodriguez was then transported to Adventist Health Bakersfield where he was declared brain dead. On September 8, he was pronounced dead. Mr. Rodriguez was held at the Kern County Sheriff's Office Lerdo Pre-Trial Facility for only 18 days before this incident occurred.

53.    On September 6, 2020, pretrial detainee Angel Barrios died of suicide while being held at the Kern County Sheriff's Office Lerdo Pre-Trial Facility. Mr. Barrios was observed hanging from a ligature from his bed. A sheet was tied to the top metal portion of the bunk bed and around his neck. Mr. Barrios was 27 years old at the time and left a handwritten note expressing his love for his family. He had been incarcerated for only three weeks prior to his death. Mr. Barrios was pronounced dead at the scene despite resuscitative efforts.

54.    On December 26, 2020, pretrial detainee Marvinesha Johnson was found unresponsive while in her cell at the Kern County Sheriff's Office Lerdo Pre-Trial Facility. Her cellmate became concerned when she noticed that Ms. Johnson was not snoring while she slept, as she typically did. Ms. Johnson was found on her left side unresponsive, with the cause of death deemed as Sertraline (Zoloft) and Other Drug Intoxication. Ms. Johnson was pronounced dead at the scene despite resuscitative efforts, at 29 years old.

**COMPLAINT FOR DAMAGES**

55.    On September 23, 2021, Erick Diaz, a 30-year-old male, was found on his cell floor unresponsive at the Kern County Sheriff's Office Lerdo Pre-Trial Facility. Immediately upon his booking only three months prior, Mr. Diaz was placed alone in administrative segregation due to his mental health status. He was also pending clearance to determine if he was competent to stand trial. On the day of his passing, Mr. Diaz stayed in his cell room and never came out. During medical rounds, he stayed in his bunk and did not get up. Upon being found unresponsive that evening, resuscitative efforts were administered but Mr. Diaz was pronounced dead at the scene. Brownish purge fluid was observed underneath Mr. Diaz's head by the dispatcher on scene. According to the autopsy report he was found with "bilateral ventral wrist scars which are crisscrossing an average between 1 or 2 inches on both wrists." The COUNTY's Medical Examiner determined Mr. Diaz's mechanism of death was Hypertensive Heart Disease, despite these concerning behaviors.

56.    On January 20, 2023, Zion Xiong died of suicide at the Kern County Sheriff's Office Lerdo Pre-Trial Facility. Mr. Xiong was found unresponsive and alone in his cell with a white sheet tied around his neck and the sheet tied to the top bunk. He was slightly leaning forward with his knees bent and his feet on the cemented floor. Despite resuscitative measures, Mr. Xiong was pronounced dead at the scene. Mr. Xiong was 42 years old at the time of his death and was incarcerated for less than a month before his passing.

57.    On March 4, 2023, Stephen Ingle (our Decedent) was found unresponsive at the Kern County Sheriff's Office Central Receiving Facility. Only 3 days after he was booked, he was found hanging from a shower rod with a jail bed sheet tied around his neck, with the other end tied to the shower curtain rod. Mr. Ingle was transferred to the hospital on March 4, still unresponsive. His family was not notified until March 9. Nurses informed his family that he sustained several injuries including: a skull fracture, eight staples in his head, and two black eyes. In the Autopsy Report it is indicated that there is a "5/8-inch ovoid red purple bruise on the lower right anterior neck just above the clavicle." Mr. Ingle remained in the hospital

**COMPLAINT FOR DAMAGES**

for twenty-five (25) days, and was transferred to hospice, where he passed after one (1) day. He was 38 years old when he passed away and was only incarcerated for 3 days before the incident that would lead to his death on March 29, 2023. The manner of death was classified as asphyxia due to hanging.

58.     On May 3, 2023, pretrial detainee Derrick Austin died of suicide while in custody at the Lerdo Justice Facility.  The KCSO custody staff and medical staff were aware that Derrick Austin had a history of multiple indicators of elevated suicide risk.  Indeed, Mr. Austin displayed gravely concerning suicidal behavior and emotional distress throughout his 2023 incarcerations at the COUNTY Jails, which included violently banging his head against the cell wall causing his head to bleed and swell, threatening to commit suicide by various means, and tying various forms of nooses around his neck. Indeed, the week prior to his death, the court determined that Mr. Austin needed to be placed in State Hospital Evaluation Competency due to the custody and medical staff's obvious inability to care for Mr. Austin.  Tragically, the day of his death, the KCSO floor deputy failed to conduct a proper and adequate Title 15 welfare check.  Despite the fact that Mr. Austin was clearly in distress and suffering from a medical emergency, the KCSO floor deputy ignored Mr. Austin. When the KCSO custody staff finally opened Mr. Austin's cell door and went into his cell, they found Mr. Austin dead with the elastic waist band of his boxers around his throat.

59.     On April 21, 2023, pretrial detainee Shai Rogers died of suicide while in custody at the Lerdo Justice Facility. Mr. Rogers was found unresponsive on the floor next to the telephone, with the phone cord wrapped around his neck. He was last seen alive by control staff walking out of his cell into the phone area, when he proceeded to sit in a seated position. Mr. Rogers arrived at the Lerdo Justice Facility on March 3, 2023, and was still awaiting trial. Upon his arrival, he made several suicidal statements to staff and was placed on a suicide watch. According to the jail records, he attempted to hang himself at the Central Receiving Facility on March 3, 2023. He had a history of mental illness including schizophrenia and depression. Despite

resuscitative measures, he was pronounced dead at the scene. Mr. Rogers was 34 years old at the time of his passing.

60. On September 2, 2023, pretrial detainee Matthew Richards was found unresponsive in his cell at the Kern County Sheriff's Office Mojave Substation Jail. Mr. Richards was found with a shoestring tied around his neck from the top bunk of his cell. His feet were touching the floor, and he was slouching in a forward direction when he was located. The deputy on scene could not recall the exact time the last check was conducted to check on the well-being of incarcerated persons such as Mr. Richards. Mr. Richards was then transferred to the Antelope Valley Medical Center where he was pronounced dead on September 4, 2024. This was only 2 days after he was arrested and booked. His cause of death was found to be asphyxia due to hanging. Mr. Richards was 31 years old at the time of his passing.

61. On September 10, 2023, Irene Rivera died of suicide at the Kern County Central Receiving Facility. Ms. Rivera was found hanging with a plastic bag wrapped around her neck while the bag was tied to the upper part of the bars in the cell. Despite resuscitative measures being performed, Ms. Rivera was pronounced dead at the scene. Ms. Rivera was arrested that same day, only an hour and a half prior to her passing. She was 31 years old at the time of her passing and had given birth to a child two months prior to her death.

**B. The County' Indifference to the Constitutional Violations and Failures Permeating the COUNTY Jails Affecting Inmates with Mental Health Issues.**

62. SHERIFF YOUNGBLOOD, through his supervision of the COUNTY's medical staff, was responsible for the provision of medical and mental health services at the COUNTY Jails, and as such, were responsible for the following at the COUNTY Jails:

    a. Staffing for the jail's medical and mental health units;

    b. Administrative structure, medical direction and operational oversight for the medical and mental health units;

16

**COMPLAINT FOR DAMAGES**

c. Oversight of the day-to-day operations of the health services programs at the jail;

d. Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

e. Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

f. Development, implementation and revision policies, procedures and practices for the training of custody, medical and mental health staff at the jail;

g. Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

h. Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

63. COUNTY, KCSO, SHERIFF YOUNGBLOOD, and the COUNTY custody, medical and mental health staff, and each of them, had been on notice for years that their provision of medical and mental health treatment to inmates at the COUNTY Jails was inadequate and resulted in needless harm and death.

64. Defendant KCHA and the COUNTY custody, medical and mental health staff, and each of them, were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths.

65. Notably, in 2006, SHERIFF YOUNGBLOOD remarked that it was cheaper for taxpayers that inmates be "cripple[d]" in custody rather than "kill[ed]" in

17

**COMPLAINT FOR DAMAGES**

custody.[1]

66.    Based on the aforementioned, Defendants COUNTY, KCSO, SHERIFF YOUNGBLOOD, and the COUNTY custody, medical and mental health staff, and each of them, knew of the dangers that posed a risk to decedent STEPHEN INGLE's safety, yet disregarded these dangers resulting in his death.

**PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS**

**(Against individual Defendants SHERIFF DONNY YOUNGBLOOD DOES 1-10)**

67.    Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

68.    Long before STEPHEN INGLE's death, SHERIFF YOUNGBLOOD and DOES 1 through 10 knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

69.    SHERIFF YOUNGBLOOD, ROBERT WINN, ISAAC QUIROZ, KYLE MCKEEVER, JESSE NOREZ, WILLIAM HINKLE, CONNOR BRAY, RILEY HAISLIP and DOES 1 through 10 were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths, as detailed in Section VI above.

70.    Despite this long history of complete disregard to inmate safety and protection, SHERIFF YOUNGBLOOD, ROBERT WINN, ISAAC QUIROZ, KYLE MCKEEVER, JESSE NOREZ, WILLIAM HINKLE, CONNOR BRAY, RILEY HAISLIP have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

71.    The Defendant officers, and each of them, acted with malice and

---

[1] Kern County Sheriff caught on tape saying it costs less to kill suspects, Kern County Sheriff caught on tape saying it costs less to kill suspects - ABC7 San Francisco (abc7news.com).

**COMPLAINT FOR DAMAGES**

oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

### **FIRST CLAIM FOR RELIEF**

**Failure to Protect from Harm,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of STEPHEN INGLE As Against DOES 1 through 10**

72.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

73.     Pretrial detainees such as STEPHEN INGLE have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

74.     Upon information and belief, on March 1, 2023, when Defendants DOES 1 through 10, and each of them were processing and classifying STEPHEN INGLE, Defendants DOES 1 through 10 made the intentional decision to place STEPHEN INGLE in a condition of confinement which significantly exposed him to the risk of harm which ultimately caused STEPHEN INGLE's death.

75.     Indeed, upon information and belief, from March 1, 2023 to March 4, 2023, Defendants DOES 1 through 10, and each of them, continued to make the intentional decision to place STEPHEN INGLE in a communal cell with other inmates.

76.     On March 4, 2023, at around 5:14 p.m., STEPHEN INGLE was found hanging from a shower rod with a jail issued bedsheet tied around his neck and the other end of the jail-issued bedsheet tied to the shower curtain rod above his head.

77.     Therefore, by not taking such measures, Defendants DOES 1 through 10, and each of them, caused STEPHEN INGLE's death.

**COMPLAINT FOR DAMAGES**

78.    Furthermore, Defendants DOES 1 through 10, and each of them also placed STEPHEN INGLE in a condition wherein STEPHEN INGLE could have carried out self-harm.

79.    Clearly, such condition put STEPHEN INGLE at substantial risk of suffering serious harm because STEPHEN INGLE had access to many weapons of death and hazards which he could use to commit suicide. Despite having clear knowledge regarding the substantial risks that STEPHEN INGLE faced, Defendants DOES 1 through 10, and each of them did not take any reasonable available measures to abate or reduce the risks STEPHEN INGLE faced even though a reasonable person in the circumstances would have appreciated the high degree of risk involved.

80.    Therefore, Defendants DOES 1 through 10's conduct caused the obvious consequence that STEPHEN INGLE would face death or serious bodily injury. Accordingly,  by not taking such measures, Defendants DOES 1 through 10 caused the STEPHEN INGLE death.

81.    Defendants subjected STEPHEN INGLE to their wrongful conduct, depriving STEPHEN INGLE of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of STEPHEN INGLE and others would be violated by their acts and/or omissions.

82.    As a direct and proximate result of Defendants DOES 1-10' acts and/or omissions as set forth above, STEPHEN INGLE, sustained injuries and damages.

83.    The conduct of Defendants DOES 1-10 entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendant KCHA.

84.    Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

///

20

**COMPLAINT FOR DAMAGES**

**SECOND CLAIM FOR RELIEF**

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of STEPHEN INGLE As Against DOES 1 through 10**

85.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

86.    Pretrial detainees such as STEPHEN INGLE have a Fourteenth Amendment due process right to needed medical care. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

87.    By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated STEPHEN INGLE's Fourteenth Amendment rights, by depriving decedent STEPHEN INGLE, of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution: STEPHEN INGLE's right to be free from deliberate indifference to STEPHEN INGLE's serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourteenth Amendment.

88.    By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide STEPHEN INGLE with appropriate emergency medical care and monitoring, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical and mental health care and life saving care to persons in their custody, constituted deliberate indifference to STEPHEN INGLE's serious medical and mental health needs, health, and safety.

89.    Indeed, on March 4, 2023, Defendants and each of them, made the intentional decision to deny STEPHEN INGLE the proper medical care by placing

**COMPLAINT FOR DAMAGES**

STEPHEN INGLE in the same cell, module, or facility without monitoring his mental health. Any reasonable person in Defendants position would have known that STEPHEN INGLE was in need of medical care and monitoring.

90.    Instead of providing STEPHEN INGLE with the medical and mental health care he needed, which included being placed in a safe cell, Defendants, and each of them, denied STEPHEN INGLE proper medical care and put him in substantial risk of suffering serious harm by returning STEPHEN INGLE to a communal cell.

91.    In fact, it was also more than evident on March 4, 2023, that STEPHEN INGLE's situation was dire and he needed immediate medical care, including medical related to his mental state and suicidal condition. STEPHEN INGLE needed immediate medical care to address his potential suicidal condition Indeed, instead of providing the appropriate medical care, Defendants, and each of them, failed to take reasonable actions to summon medical care

92.    Clearly, given that STEPHEN INGLE life was in danger and at risk, Defendants, and each of them, did not take reasonable measures to reduce such risk even though any reasonable person would have appreciated the high risks involved in the situation. By failing to take such reasonable measures, it was obvious and foreseeable that STEPHEN INGLE would be reinjured if housed with the same inmates who injured him earlier on March 4, 2023. Therefore, by not taking such measures, Defendants, and each of them, caused STEPHEN INGLE's death.

93.    As a direct and proximate result of Defendants' conduct, the civil rights of STEPHEN INGLE, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent STEPHEN INGLE experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

94.    Defendants subjected STEPHEN INGLE to their wrongful conduct, depriving STEPHEN INGLE of rights described herein, knowingly, maliciously, and

**COMPLAINT FOR DAMAGES**

with conscious and reckless disregard for whether the rights and safety of STEPHEN INGLE and others would be violated by their acts and/or omissions.

95. As a direct and proximate result of Defendants DOES 1-10' acts and/or omissions as set forth above, STEPHEN INGLE, sustained injuries and damages.

96. The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendant KCHA.

97. Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## THIRD CLAIM FOR RELIEF

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiff C.R.I. As Against DOES 1 through 10**

98. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

99. The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent STEPHEN INGLE's protection, safety, and serious medical and mental health needs, violating decedent STEPHEN INGLE's constitutional rights. STEPHEN INGLE's death was also a result of Defendants DOES 1 through 10' failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of STEPHEN INGLE and deprived Plaintiff C.R.I., a minor, by and through her guardian ad litem Elizabeth Leal, of her liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendment of the Constitution.

100. All of the acts of Defendants DOES 1 through 10 and the persons involved were done under color of state law.

**COMPLAINT FOR DAMAGES**

101.   The acts and omissions of each Defendants deprived Plaintiff C.R.I., a minor of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff of her rights to a parent-child relationship with decedent, her father, STEPHEN INGLE without due process of law by their deliberate indifference in denying STEPHEN INGLE protection and safety while incarcerated at CRF and access to medical care while suffering a medical emergency at CRF.

102.   Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the KCHA. These include policies and longstanding practices or customs of failing to protect from harm, being deliberately indifferent to medical needs, failing to provide persons in pretrial custody proper Tile 15 safety checks, failing to provide persons in pretrial safety from the known violence of other inmates, facilitating a staggering number of suicides in custody by permitting suicidal inmates to have access to weapons of death and hazards while in custody.

103.   In addition, the training policies of the KCHA were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in pretrial custody who are experiencing emergencies because of the known propensity for violence of other inmates. These Defendants and each of them knew that its failure to adequately train its COUNTY custody, medical and mental health staff, including other agents and employees, to interact with individuals suffering from emergencies, made it highly predictable that its custody, medical and mental health staff would engage in conduct that would deprive persons such as decedent STEPHEN INGLE, and thus Plaintiffs C.R.I., a minor, by and through her guardian ad litem Elizabeth Leal, of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

**COMPLAINT FOR DAMAGES**

104. KCHA's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff C.R.I., a minor, and decedent STEPHEN INGLE by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to STEPHEN INGLE's injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

105. As a direct and proximate result of Defendants' conduct, the civil rights of STEPHEN INGLE, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent STEPHEN INGLE experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

106. Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

107. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages, including being deprived of her father for the rest of her life.

108. The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against KCHA.

109. Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## FOURTH CLAIM FOR RELIEF

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff Estate of STEPHEN INGLE As Against Defendant**

**KERN COUNTY HOSPITAL AUTHORITY**

**COMPLAINT FOR DAMAGES**

110. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

111. As set forth in the forgoing CLAIM FOR RELIEF, Defendants DOES 1-10, inclusive, and each of them, committed clear and well-established violations of constitutional rights against STEPHEN INGLE within the course and scope of their employment, while acting under color of law.

112. At all times relevant hereto, the KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff were required to adhere to and enforce the following policy and procedures:

    a.    All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff will have an outlined program for responding to inmate on inmate violence;

    b.    All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff will review information of newly arriving inmates in this institution concerning issues of inmate on inmate violence;

    c.    All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff must learn about an inmates' high-risk periods immediately upon admission to a facility;

    d.    All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff must learn about an inmates' high-risk periods after adjudication, when the inmate is returned to a facility from court;

    e.    All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff must learn about an inmate's high-risk periods following the receipt of bad news regarding self or family;

    f.    All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff must learn about an inmates' high-risk periods after suffering from some type or form of
humiliation, rejection or abuse;

**COMPLAINT FOR DAMAGES**

g.   All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff will review information of newly arriving inmates in this institution concerning issues related to suicide;

h.   All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff conducting the intake personal screen will be continuously alert to suicidal behavior;

i.   All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for suicide;

j.   All KERN COUNTY HOSPITAL AUTHORITY custody, medical and mental health staff who recognize an inmate as being potentially suicidal are to request immediate evaluation of the patient;

k.   All assessments of potentially suicidal inmates are to be conducted by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

l.   Inmates who have been determined to be suicidal should be placed/housed according to institutional policy and procedures for the monitoring of such individuals within the correctional setting;

m.   Regular documented supervision should be maintained;

n.   Inmates who have been determined to be suicidal should be placed/bound in the appropriate acute mental health housing;

o.   Suicidal inmates should not be housed alone, or left alone, unless constant supervision can be maintained. If constant supervision cannot be provided when needed, the inmate should be housed with another resident or in a dormitory and monitored by video camera by correctional staff;

p.   The rooms should be as nearly suicide proof as possible and constant supervision by a staff member is preferable;

27

**COMPLAINT FOR DAMAGES**

q.  The procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities should be clearly outlined;

r.  Clear, current and accurate information regarding an inmate must be communicated between health care personnel and correctional personnel pursuant to the procedures of communication;

s.  The intervention plan on how to handle a suicide that is in progress, including appropriate first aid measures, should be clearly outlined;

t.  Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed suicides will be in place;

u.  Procedures for documenting the identification and monitoring of potential or attempted suicides will be detailed, as well as procedures for reporting a completed suicide;

v.  The suicide plan should specify the procedure for medical administrative review if a suicide does occur; and

w.   A formal psychiatric/suicide review should take place following all successful suicides, or significant suicide attempts.

113.  The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendant KCHA on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendant and KCHA stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant KCHA:

a.  Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities;

28

**COMPLAINT FOR DAMAGES**

b. Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

c. Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following:

 i. separation of detainees and arrestees from potentially violent or dangerous inmates;

 ii. use of security cameras to monitor violence within jail cells;

 iii. training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence;

d. Failing to properly classify, house, and monitor vulnerable detainees, arrestees and inmates;

e. Failing to properly classify, house, and monitor violent detainees, arrestees and inmates;

f. To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the Kern County's written policies and state law;

g. Ratifying wrongful conduct by custodial and mental health staff which result in serious injuries and death to inmates in KCSO custody, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct;

h. Failing to discipline, investigate and take corrective actions against KCSO deputies, custodial staff and medical/mental health staff for misconduct, including, but not limited to, showing grave deliberate indifference to the protection and safety of vulnerable inmates;

i. Employing and retraining KCSO deputies, custodial staff and medical/mental health staff who knew or reasonably should have known

29

**COMPLAINT FOR DAMAGES**

had dangerous propensities for abusing their authority and for mistreating inmates and being deliberately indifference to the rights of inmates;

j.    Inadequately supervising, training, controlling, assigning, and disciplining KCSO deputies, custodial staff and medical/mental health staff who knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

k.    To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

l.    To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

m.    To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

n.    To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

o.    To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

p.    To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

30

**COMPLAINT FOR DAMAGES**

q.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

r.  To cover up violations of constitutional rights by any or all of the following:

i.   By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

ii.  By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

iii. By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Kern County jails;

iv.  By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

s.  To allow, tolerate, and/or encourage a "code of silence" among enforcement officers, sheriff's office personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the sheriff's office, or medical staff does not provide adverse information against a fellow officer, or member of the sheriff's office or the medical staff;

t.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (s) above, with deliberate indifference to the

**COMPLAINT FOR DAMAGES**

rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

114. The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the KCHA on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the KCHA, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the KCHA:

a.    To fail to properly and adequately hire, train, supervise, and monitor custody, medical and mental health staff at the jails;

b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical and mental health crisis;

c.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

d.    To cover up violations of constitutional rights by any or all of the following:

i.    By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical and mental health crisis;

ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

32

**COMPLAINT FOR DAMAGES**

e.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.    To allow, tolerate, and/or encourage a "code of silence" among custody, medical and mental health staff at the COUNTY jails whereby custody, medical and mental health staff does not provide adverse information against one another;

g.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

115.    Defendant KCHA through their employees and agents, and through their policy-making supervisors, SHERIFF YOUNGBLOOD and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline ROBERT WINN, ISAAC QUIROZ, KYLE MCKEEVER, JESSE NOREZ, WILLIAM HINKLE, CONNOR BRAY, and  DOES 1 through 10, and other KCHA personnel, with deliberate indifference to the constitutional rights of decedent STEPHEN INGLE, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

116.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY custody, medical and mental health staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the KCHA including DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the KCHA and that such policymakers have direct knowledge of the fact that the death of STEPHEN INGLE was the result of deliberate indifference to

33

**COMPLAINT FOR DAMAGES**

his rights to be protected and safe while in the custody of the COUNTY/KCSO, and his rights to have access to medical care when suffering a medical emergency.

117.    Notwithstanding this knowledge, the authorized policymakers within the KCHA have approved of the conduct and decisions of ROBERT WINN, ISAAC QUIROZ, KYLE MCKEEVER, JESSE NOREZ, WILLIAM HINKLE, CONNOR BRAY, and DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of STEPHEN INGLE. By so doing, the authorized policymakers within the KCHA have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiff is informed and believe, and thereupon allege, that HERIFF YOUNGBLOOD, and DOES 8 through 10, and other policy-making officers for the KCHA were and are aware of a pattern of misconduct and injury caused by COUNTY custody, medical and mental health staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody, medical and mental health staff and failed to institute new procedures and policy within the KCHA.

118.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendant KCHA were a moving force and/or a proximate cause of the deprivations of decedent STEPHEN INGLE's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent STEPHEN INGLE to their wrongful conduct, depriving decedent STEPHEN INGLE of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent STEPHEN INGLE, Plaintiff and others would be violated by their acts and/or omissions.

119.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendant KCHA as described above, decedent STEPHEN INGLE suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendant and KCHA.

**FIFTH CLAIM FOR RELIEF**

**Negligence – Wrongful Death**

**Plaintiff C.R.I. As Against All Defendants**

120.   Plaintiff realleges and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

121.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendant KCHA is liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendant KCHA, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

122.   At all times, Defendants DOES 1 through 10 owed Plaintiff and decedent STEPHEN INGLE the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

123.   At all times, these Defendants owed Plaintiff and decedent STEPHEN INGLE the duty to act with reasonable care.

124.   These general duties of reasonable care and due care owed to Plaintiff and decedent STEPHEN INGLE by these Defendants include but are not limited to the following specific obligations:

    a.   To properly identify symptoms of suicide; To properly take precautions in housing and confining an inmate who has symptoms of suicide; To

35

**COMPLAINT FOR DAMAGES**

house and confine a suicidal inmate in a housing cell free of suicide hazards; To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

b.    To summon, or transport Decedent to, necessary and appropriate emergency medical and mental health care

c.    To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

d.    To refrain from abusing their authority granted them by law; and

e.    To refrain from violating Plaintiff's and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

125.    Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff and decedent STEPHEN INGLE.

126.    Defendant KCHA is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

127.    As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent STEPHEN INGLE sustained injuries and damages, and against each and every Defendant named in this claim for relief in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## SIXTH CLAIM FOR RELIEF

### Negligence – Medical Malpractice

**Plaintiff ESTATE OF STEPHEN INGLE As Against KCHA Nurses DOES 1, 2, 3 and DOES 5-10**

36

COMPLAINT FOR DAMAGES

128.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

129.    The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, KCHA Nurses DOES 1, 2, 3 and DOES 5-10 , inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendant KCHA is liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendant KCHA, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

130.    Decedent STEPHEN INGLE was under the care and treatment of KCHA Nurses DOES 1, 2, 3 and DOES 5-10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including CRF, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and KCSO, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent STEPHEN INGLE to specialist medical care providers; negligently failed to provide physician care; negligently failed to provide psychiatry care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee STEPHEN INGLE.

131.    Defendants KCHA Nurses DOES 1, 2, 3 and DOES 5-10, all of whom were COUNTY medical staff assigned to the COUNTY Jails failed to properly monitor

STEPHEN INGLE after he returned from the hospital on March 4, 2023, with eight (8) staples in his head.

132. It was more than evident that from March 1, 2023, through March 4, 2023, that STEPHEN INGLE's situation was dire and he needed immediate medical care. STEPHEN INGLE needed immediate care to address his potential suicidal condition . Instead of providing the appropriate medical care, KCHA Nurses DOES 1, 2, 3 and DOES 5-10 , and each of them, failed to take reasonable actions to summon medical care

133. Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent STEPHEN INGLE emergency medical and mental health care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent STEPHEN INGLE was provided.

134. As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiff sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

135. Defendant KCHA is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

### SEVENTH CLAIM FOR RELIEF

**Violation of California Government Code § 845.6**

**Plaintiff ESTATE OF STEPHEN INGLE As Against All Defendants**

136. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

137. The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or

omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendant KCHA is liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendant KCHA, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

138.   Defendants DOES 1 through 10 knew STEPHEN INGLE was in need of immediate medical care and treatment when he was hanging from the shower rod, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendant KCHA, knowing and/or having reason to know of decedent STEPHEN INGLE's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

139.   In fact, it was more than evident on March 4, 2023, that STEPHEN INGLE's situation was dire and he needed immediate medical care. STEPHEN INGLE needed immediate care to address his potential suicidal condition. Instead of providing the appropriate medical care, Defendants DOES 1 through 10, and each of them, failed to take reasonable actions to summon medical care.

140.   Defendant KCHA is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

141.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent STEPHEN INGLE was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

**COMPLAINT FOR DAMAGES**

## EIGHTH CLAIM FOR RELIEF

### Violation of California Civil Code § 52.1

### (Tom Bane Act)

### Plaintiff ESTATE OF STEPHEN INGLE As Against All Defendants

142. Plaintiff reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

143. The present claim for relief is brought pursuant to Civil Code § 52.1, Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendant KCHA is liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendant KCHA, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

144. Plaintiff brings the claims in this claim for relief as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq*.

145. By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent STEPHEN INGLE was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated STEPHEN INGLE's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

    a.    The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

**COMPLAINT FOR DAMAGES**

b.    The right for the familial association to be free from government interference as secured by the Fourteenth Amendment to the United States Constitution;

c.    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

d.    The right to emergency medical and mental health care as required by California Government Code §845.6.

e.    The right to be free from bodily harm.

146.   Defendants' violations of decedent STEPHEN INGLE's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[2] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of STEPHEN INGLE's rights as described above, Defendants violated STEPHEN INGLE's rights by the following conduct constituting threat, intimidation, or coercion:

a.    With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

b.    With deliberate indifference to the safety of pretrial detainees;

c.    With deliberate indifference to Decedent's serious medical and mental health needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

---

[2] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

41

**COMPLAINT FOR DAMAGES**

d.    Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Kern County jail detainees and inmates;

e.    Requiring medical and mental health staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

f.    Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

147. The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent STEPHEN INGLE's rights, or to any legitimate and lawful jail or law enforcement activity.

148. Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

149. Further, each Defendant violated decedent STEPHEN INGLE's rights with reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

150. Defendant KCHA is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

151. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent STEPHEN INGLE's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all

**COMPLAINT FOR DAMAGES**

individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## TENTH CLAIM FOR RELIEF

### Declaratory Relief

### (28 U.S.C § 2201)

### Plaintiffs As Against All Defendants

152. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

153. There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

154. Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.    Wrongful death of STEPHEN INGLE, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.    STEPHEN INGLE's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.    Violation of STEPHEN INGLE's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.    STEPHEN INGLE's loss of life, pursuant to federal civil rights law;

**COMPLAINT FOR DAMAGES**

F.  STEPHEN INGLE's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.  General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.  Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.  Punitive damages as to individual defendants;

J.  Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.  A multiplier of damages, including treble damages, under the Tom Bane Act;

L.  Penalties under the Tom Bane Act;

M.  Interest; and

N.  All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

Respectfully Submitted,

Dated: March 28, 2025        **GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Selene Estrada-Villela, Esq.
Attorneys for Plaintiffs,
ESTATE OF STEPHEN INGLE, et al.

**COMPLAINT FOR DAMAGES**

Dated: March 28, 2025          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                               **A PROFESSIONAL LAW CORPORATION**


By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF STEPHEN INGLE, et al.


Dated: March 28, 2025          **LAW OFFICES OF HUMBERTO GUIZAR**


By:   */s/ Humberto Guizar*
Humberto Guizar, Esq.
Attorneys for Plaintiffs,
ESTATE OF STEPHEN INGLE, et al.

45

**COMPLAINT FOR DAMAGES**

## DEMAND FOR JURY TRIAL

Plaintiffs, ESTATE OF STEPHEN INGLE, by and through successors in interest, C.R.I., a minor, by and through Guardian Ad Litem, ELIZABETH LEAL, hereby make a demand for a jury trial in this action.

Respectfully Submitted,

Dated: March 28, 2025          **GASTÉLUM LAW, APC**

By: *Denisse O. Gastélum*
Denisse O. Gastélum, Esq.
Selene Estrada-Villela, Esq.
Attorneys for Plaintiffs,
ESTATE OF STEPHEN INGLE, et al.

Dated: March 28, 2025          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                            **A PROFESSIONAL LAW CORPORATION**

By: *Christian Contreras*
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF STEPHEN INGLE, et al.

Dated: March 28, 2025          **LAW OFFICES OF HUMBERTO GUIZAR**

By:   */s/ Humberto Guizar*
Humberto Guizar, Esq.
Attorneys for Plaintiffs,
ESTATE OF STEPHEN INGLE, et al.

**COMPLAINT FOR DAMAGES**